# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Mark A. Giandomenico**

    v.　　　　　　　　　　　　　　　Civil No. 16-cv-506-PB
　　　　　　　　　　　　　　　　　　Opinion No. 2017 DNH 237
**U.S. Social Security
Administration, Acting
Commissioner**


### MEMORANDUM AND ORDER

Mark Giandomenico challenges the Social Security Administration's denial of his claim for Supplemental Security Income ("SSI") benefits, pursuant to 42 U.S.C. § 405(g). He contends that the Administrative Law Judge ("ALJ") erred in assessing his residual functional capacity ("RFC") by improperly relying upon the opinion of a consultative physician who allegedly relied on an outdated medical record. The Acting Commissioner, in turn, moves for an order affirming the ALJ's decision. For the reasons that follow, I grant Giandomenico's motion to reverse and remand the Commissioner's decision.


### I. BACKGROUND

Giandomenico is a 48 year-old man who has worked as a bell ringer for the Salvation Army, a concession-stand clerk, and a cook. See Administrative Transcript (hereinafter "Tr.") 213, 229 (Doc. No. 4). He applied for SSI in October 2013, alleging

disability as of July 23, 2012, due to heart disease, stroke, asthma, and high blood pressure, among other ailments. See Tr. 12, 211.[1] At the forefront of Giandomenico's claim, symptomatically speaking, are his severe breathing difficulties and the residual effects of an October 2013 stroke, which caused numbness, a tingling sensation, and diminished strength in the right side of his body. See Tr. 34-35. Furthermore, beginning as late as March 2015 and occurring as recently as July 2015, Giandomencio has experienced presynocopal episodes, or fainting spells. See Tr. 623, 785. The cause of these episodes has not been determined, although altered blood flow of the cerebral and extracranial vessels, or stenosis of the prostatic aortic valve have both been suspected. See Tr. 779, 785, 794.

Giandomenico now appeals from a September 21, 2016 decision of the SSA Appeals Council denying his request to review the ALJ's determination that he was "not disabled." See Tr. 20.

## II. **THE ALJ'S DECISION**

The ALJ's conclusion followed from his application of the five-step, sequential analysis required by 20 C.F.R. §

---

[1] In accordance with Local Rule 9.1, the parties have submitted a joint statement of stipulated facts, (Doc. No. 9). See LR 9.1. Because that joint statement is part of the court's record, I only briefly recount it here. I discuss facts relevant to the disposition of this matter as necessary below.

2

416.920(a). See Tr. 12-21. At step one, the ALJ found that Giandomenico had not worked since October 1, 2013, the date of his application. See Tr. 14. At step two, the ALJ found that Giandomenico had severe impairments of obesity, asthma, sleep apnea, hypertension, status post cardiovascular accident with residual right-sided weakness, status post aortic valve replacement, and psoriasis. Id. The ALJ further found that Giandomenico's only medically-determinable mental impairments, depression and memory impairment, were nonsevere. See Tr. 14-15. At step three, the ALJ found that none of Giandomenico's impairments, individually nor in combination, qualified for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.; see 20 C.F.R. §§ 416.920(d), 416.925-26. Specifically, the ALJ considered Giandomenico's pulmonary and cardiac impairments under the pertinent listings, along with the potential contributive effects of obesity to those impairments, but concluded that the evidence of record did not demonstrate the requisite severity under either listing. See Tr. 16.

At step four, the ALJ determined that Giandomenico had the RFC to perform light exertional work, as defined in 20 C.F.R. § 416.967(b), with several postural, manipulative, and environmental limitations.[2] See Tr. 16-19. In so doing, the ALJ

---

[2] Specifically, the ALJ found that Giandomenico: (i) could "no more than frequently push or pull, handle, feel or finger with

3

found that although there was a reasonable nexus between Giandomenico's impairments and his alleged symptoms, his statements regarding the "intensity, persistence and limiting effects" of those symptoms were not "entirely credible." Tr. 17-18. Moreover, the ALJ found that "the nature, duration and frequency of [Giandomenico's] pain resulted in only a minimal actual functional limitation based on his own description of his daily activities and the treatment notes of examining physicians." Tr. 19. Although, the ALJ determined that Giandomenico was unable to perform his past relevant work, he concluded that Giandomenico "can perform a wide range of light exertional work activities despite his physical impairments." Tr. 19.

In reaching his conclusion, the ALJ essentially adopted the findings of Burton Nault, M.D, a physician employed by the State Disability Determination Services ("DDS"), who reviewed Giandomenico's medical records as of February 6, 2014 and offered an opinion regarding his RFC. Id. The ALJ reasoned that nothing had been admitted into the record indicating that Giandomenico's condition had worsened from the time of Dr.

---

the right upper extremity"; (ii) could only occasionally climb ramps or stairs, or crawl; (iii) could "never climb ladders, ropes, or scaffolds" ; and (iv) "must avoid concentrated exposure to extreme temperatures, humidity, pulmonary irritants, hazardous machinery, and unprotected heights." Tr. 16.

4

Nault's review, and no treating source had opined that Giandomenico had incurred additional limitations as of that time.  Id.

Finally, at step five, the ALJ determined that despite his limitations, Giandomenico could work in a significant number of "light exertional" jobs available in both the regional and national economy.[3]  Consequently, the ALJ found that Giandomenico was "not disabled" under the appropriate framework, and denied his claim for SSI.  Tr. 20-21.

### III. **STANDARD OF REVIEW**

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  See 42 U.S.C. § 405(g).  That review is limited, however, "to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  I defer to the ALJ's findings of fact, so long as those findings are supported by substantial evidence.  Id.

---

[3] Specifically, the representative, light-exertional occupations considered by the ALJ included usher, ticket taker, and photo copy machine operator.  See Tr. 20.  A vocational expert opined that those positions would be suitable for a hypothetical person of Giandomenico's age, education, work experience, and RFC.  Id.

5

Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the ALJ's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. If, however, the ALJ derived her findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts," they are not conclusive. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769. Furthermore, resolving conflicts in the evidence is the exclusive role of the ALJ. Id.

### III.  ANALYSIS

Giandomenico asks me to reverse and remand the Commissioner's decision because the ALJ committed multiple errors in assessing his RFC and improperly relied upon certain vocational expert testimony at step five. Among his other arguments, Giandomenico contends that the ALJ erred in his RFC

6

assessment by improperly relying upon the opinion of the state-agency consultative physician, Dr. Nault, which he claims was made without review of his full medical record. See Doc. No. 6 at 5-10. Specifically, he cites multiple doctor's appointments and tests that did not take place until months after Dr. Nault rendered his opinion, which he claims indicate a decline in his condition. In response, the Commissioner argues that the ALJ's consideration of Dr. Nault's opinion was appropriate because none of the medical evidence postdating Dr. Nault's review tends to contradict his RFC opinion, require a finding of additional functional limitations, or show a worsening in Giandomenico's condition. See Doc. No. 7-1 at 7-8. Alternatively, the Commissioner argues that even if such evidence does evince a regression in Giandomenico's condition, "the ALJ accounted for this change by imposing greater [functional] limitations than Dr. Nault." Id. at 9. Because I determine that the ALJ committed reversible error in adopting Dr. Nault's opinion, I need not address Giandomenico's remaining claims.

**A.   Dr. Nault**

On February 6, 2014, Dr. Nault offered an opinion regarding Giandomenico's physical RFC as part of the SSA's initial disability determination. Tr. 19, 74, 77. Dr. Nault concluded that Giandomenico could perform light exertional work, could stand and/or walk for a total of six hours out of an eight hour

7

work day, and could sit for up to six hours as well.  Id.  He
did not find any postural, manipulative, or environmental
limitations necessary.  Id.  In reaching his conclusion, Dr.
Nault considered Giandomenico's heart disease, stroke, asthma,
high blood pressure, and aortic disease.  Tr. 73.

In his explanation, Dr. Nault first noted Giandomenico's
"history of aortic valve replacement with adequate recovery."
Tr. 73.  He found that as of October 24, 2013, an "EKG supported
a right bundle block only," and an "[e]chocardiogram was
satisfactory."  Tr. 73.  Second, he noted that on October 2,
2013, Giandomenico had "developed some numbness and tingling on
the right side with a subacute left thalamic infarct with good
recovery," but as of December 4, 2013, his treating neurologist
found "only mild tingling left in the face."  Id.  Third, he
noted that pulmonary function studies conducted on October 30,
2013 "supported an FEV1 of 2.25 liters at 66" pre-bronchodilator
study only," and that a pulmonary study conducted on November
18, 2013 "supported no significant breathing problems."  Id.
Lastly, Dr. Nault noted Giandomenico's "mild psoriasis history"
and that "[h]e used Vistaril occasionally for asthma."  Id.

On November 2, 2015, the ALJ "essentially adopted" the
findings of Dr. Nault in reaching his conclusion that
Giandomenico retained the RFC to perform a wide range of light
exertional work with certain additional limitations, as

8

discussed *supra* note 2. Tr. 19. In support, the ALJ simply stated that "nothing [had] been admitted into the record to indicate that [Giandomenico's] condition [had] worsened since [Dr. Nault] conducted his review [or] to indicate that [he] had additional limitations during the period at issue." Id. He further noted that "no treating source has opined that [Giandomenico] has additional limitations." Id. Although the ALJ did discuss some of the medical evidence postdating Dr. Nault's review in conducting his own RFC assessment, the quoted passage was the full extent of his explanation for giving Dr. Nault's opinion "substantial weight." Id. at 18-19. No other medical opinions were explicitly discussed.

Giandomenico now contends that Dr. Nault's opinion is based on an incomplete review of his medical records, alleging that some of his impairments had not yet been diagnosed at the time of Dr. Nault's review, and that some then-existing impairments had worsened by the time of the ALJ's decision. See Doc. No. 6 at 9. Giandomenico specifically cites 11 records postdating Dr. Nault's review that he claims generally evince additional diagnoses and worsening conditions. Id. at 9-10. The records cited consist mostly of treatment notes[4] between April 14, 2014, and May 5, 2015, and also include the results of a pulmonary

---

[4] See Doc. No. 6 at 9-10 (citing Tr. 589-92, 727-30, 625-27, 584-87, 612, 620-24, 747-48, 580-83, 763-64, 631, 743).

9

function test[5], dated December 16, 2014, and a CT angiography of Giandomenico's neck[6], dated April 24, 2015.

**B.  <u>Reviewing-Physician's Opinion Based on Incomplete Record</u>**

The opinion of a reviewing consultant based on a "significantly incomplete record" cannot provide substantial evidence to support an ALJ's RFC finding, and therefore cannot bear "any significant weight."  <u>See, e.g.</u>, Alcantara v. Astrue, 257 Fed. Appx. 333, 334 (1st Cir.2007); Padilla v. Barnhart, 186 Fed. Appx. 19, 21 (1st Cir.2006); Meldrem v. Colvin, 2017 DNH 096, *2; Bell v. Astrue, 2012 DNH 010, *8-9.  A record is not "significantly incomplete," however, based merely on the fact that time has passed since the consultant's review and an incidental update in the claimant's condition has since occurred.  Diggett v. Berryhill, No. 16-233-M, 2017 WL 3705072, at *1 (D. R.I. Aug. 25, 2017).  "Rather, the change must be material."  <u>Id.</u>  Thus, an ALJ may rely on a consultant's outdated opinion if he determines that the evidence postdating the opinion did not materially change the record on which it was based.  <u>See</u> Alcantara, 257 Fed. Appx. at 334; Bell, 2012 DNH 010, *8-9.  The record remains materially unchanged where the new evidence either reveals no greater limitations or is

---

[5] <u>See</u> Tr. 612

[6] <u>See</u> Tr. 763-64

10

arguably consistent with the consultant's assessment. See Ferland v. Astrue, 2011 DNH 169, *4 (internal citations omitted). The burden is on the ALJ, however, to make that determination and he must make it adequately clear. See Alcantara, 257 Fed. Appx. at 334 (ALJ erred in simply stating that "the record underwent no material change" without explaining his analysis); Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004); Meldrem, 2017 DNH 096, *2; see also Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir.1991) (internal quotations and citations omitted) ("Because Social Security proceedings are not adversarial in nature, the Secretary had a duty to develop an adequate record from which a reasonable conclusion can be drawn."),

 Here, Dr. Nault's February 2014 RFC opinion was not based on a review of Giandomenico's full medical record, as his medical conditions are documented through July 2015. See Tr. 73, 784-93. Nonetheless, the ALJ gave Dr. Nault's opinion substantial weight, finding that nothing in the postdated medical records indicated a worsening of conditions warranting additional limitations. Tr. 19. In this case, however, reaching that conclusion would have necessarily required the ALJ to interpret raw medical data contained in Dr. Nault's review. See, e.g., Tr. 612, 763-64.

11

"An ALJ, as a lay person, is not qualified to interpret raw data in a medical record." Manso-Pizarro v. Sec'y of Health & Hum. Servs., 76 F.3d 15, 17 (1st Cir. 1996); Berrios Lopez v. Sec'y of Health & Hum. Servs., 951 F.2d 427, 430 (1st Cir. 1991)("Since bare medical findings are unintelligible to a lay person in terms of [RFC], the ALJ is not qualified to assess claimant's [RFC] based on the bare medical record."). Consequently, an ALJ ordinarily cannot consider raw medical data in an RFC assessment until its functional significance is assessed by a medical expert. See McGowen v. Colvin, 2016 DNH 056, *6. Although an ALJ may "render[] commonsense judgments about functional capacity based on medical findings," he may only do so within "the bounds of a lay person's competence." Gordils v. Sec'y of Health & Hum. Sevs., 921 F.2d 327, 329 (1st Cir. 1990). Therefore, "unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person," Manso-Pizarro, 76 F.3d at 17 (quoting Santiago v. Sec'y of Health & Hum. Servs., 944 F.2d 1, 7 (1st Cir. 1991)), "an expert is needed to assess the extent of functional loss." Roberts v. Barnhart, 67 Fed. Appx. 621, 622-23 (1st Cir. 2003). Thus, an ALJ can only make the required RFC assessment without supportive expert opinion where the evidence shows a "relatively mild physical impairment posing, to the layperson's eye, no

12

significant restrictions." Id. at 623(internal quotations and citations omitted).

Here, the evidence postdating Dr. Nault's review includes raw medical data, e.g. the results of a pulmonary function test ("PFT") performed in December 2014, and a CT angiography of Giandomenico's neck in April 2015.[7] See Tr. 612, 763-64. Because Giandomenico's disability claim is based, in part, on pulmonary issues, the results of a PFT and a CT angiography of his neck clearly have a bearing upon his claim. Thus, for the ALJ to rely on Dr. Nault's opinion, he would have had to independently determine that the results of those two tests did not materially change the record since the time of Dr. Nault's review, February 2014. See Bell, 2012 DNH 010, *8-9 (citing Alcantara, 257 Fed. Appx. at 334).

As a lay person, however, the ALJ was not qualified to decide whether the subsequent tests materially changed the record, because their content is beyond the competence of a layperson. See Gordils, 921 F.2d at 329; Nguyen, 172 F.3d at 35; Bell, 2012 DNH 010, *8-9. For example, the PFT, dated December 16, 2014, indicates a "[m]oderate obstructive defect

---

[7] The two records cited are problematic examples requiring remand, and not necessarily an exhaustive list of subsequent records that would have required expert review to interpret the subsequent medical evidence into functional capacity terms.

without significant bronchodilator response," among other findings[8], and contains several raw data points, such as "FEV1 is 2.37 liters or 66% predicted." Tr. 612. Similarly, the CT angiography, conducted on April 24, 2015, apparently reveals "[m]arked tortuosity of the internal carotid arteries resulting in flow defects at the bends in the vessels," among other impressions.[9] Tr. 763-64. Without the assistance of an expert, such language and figures are unintelligible to a layperson. See Berrios Lopez, 951 F.2d at 430; see also, Vega v. Colvin, 164 F. Supp. 3d 249, 262 (D. Mass. 2016) (rheumatological symptoms); Thao v. Colvin, No. 15-cv-2327, 2016 WL 4698827, at

---

[8] The "conclusion" contained in the PFT report notes: "Moderate obstructive defect without a significant bronchodilator response. Lung volumes show mild air trapping and diffusion capacity is normal." Tr. 612. The rest of the report provides raw data points, such as "FEV1 ratio is 68," "FEV1 is 2.37 liters or 66% predicted," "Total lung capacity 90% predicted," and similar notations. Id. The "reason for testing" was apparently "sarcoidosis." Id. Although treating sources noted features of sarcoidosis in Giandomenico as early as October 2013, see Tr. 536-37, he was not diagnosed with "likely sarcoidosis" until April 2015, see Tr. 582; Doc. No. 9 at 18, well after Dr. Nault's review. The ALJ makes no mention of Giandomenico's likely sarcoidosis.

[9] The "impression" from the diagnostic imaging report of Giandomenico's neck lists a number of other findings using technical terminology, such as "[b]ilateral maxillary sinus disease," "right upper lobe consolidation of unknown signifigance." Tr. 763-64. The report intimates that the scan was conducted in relation to Giandomenico's fainting episodes. See Tr. 763-64. Again, nothing in the record appears to offer a medical opinion as to the functional significance of these results.

*5 (N.D. Cal. Sept. 8, 2016) (antibody testing); Bell, 2012 DNH 010, *8-9 (MRI results).

Because the record does not appear to contain any expert medical opinions as to the functional significance of these results, we cannot know what they actually mean and whether they reflect a material change in Giandomenico's record.  See Roberts, 67 Fed. Appx. at 623 ("[A]n expert's RFC evaluation is required where "the record ... is sufficiently ramified that understanding it requires more than a layperson's effort at a commonsense functional capacity assessment." (quoting Manso-Pizarro, 76 F.3d at 19)).  Cf Torres-Tricoche v. Astrue, No. 09-1241, 2010 WL 606793, at *8 (D. P.R. Feb. 18, 2010).  Moreover, the accompanying notes do not appear to contain any lay terminology that clearly tends to "displace the materiality" of the results.  See Diggett, 2017 WL 3705072, *2 ; see also Pelletier v. Colvin, No. 13-651, 2015 WL 247711, at *16 (D. R.I. Jan. 20, 2015).  Nor does it appear in the ALJ's written decision that he made any attempt to articulate a common-sense inference from any of the subsequent findings, which would have been permissible had he made the effort.  See Douglas v. Colvin, 2016 DNH 176, *4-5 (ALJ's reasoning that "the ability to exercise regularly at a gym is generally consistent with an ability to perform at least light work" was a fair inference to reconcile consultant's RFC opinion of claimant's ability to

15

perform light exertional work with subsequent treatment recommendation to exercise). Thus, "[a]bsent a medical advisor's or consultant's assessment of the full record, the ALJ effectively substituted his own judgment for medical opinion." Alcantara, 257 Fed. Appx. at 334. His RFC determination, therefore, was not supported by substantial evidence.

In sum, because the medical evidence postdating Dr. Nault's review contained raw medical data pertaining to Giandomenico's claimed disabilities, the ALJ was unqualified to fully assess whether or not that evidence reflected a material change in Giandomenico's condition. Because the ALJ failed to identify or otherwise obtain medical opinion on the issue, he could not have determined that Dr. Nault's opinion was based on a sufficiently complete record. Therefore, Dr. Nault's opinion could not equate to substantial evidence and the ALJ erred in adopting it in his RFC assessment.[10]

---

[10] The government argues that even if the subsequent records do indicate a worsening of Giandomenico's condition, the ALJ accounted for it by finding a more limiting RFC than Dr. Nault. See Doc. No. 7-1 at 9. Although it may be true that where an ALJ purportedly errs in finding a more restrictive RFC it will typically be considered harmless error, as it is generally favorable to the claimant, that proposition is inapposite here. Here, the ALJ erred not in finding further restrictions, but rather in relying on Dr. Nault's opinion. Moreover, in the absence of a reviewing or treating expert's opinion, this determination is beyond the competence of a lay person for the same reasons discussed above. See, e.g., Duffany v. Berryhill, No. 16-11888, 2017 WL 4102585, at *9 (D. Mass. Sept. 15, 2017).

## IV. **CONCLUSION**

For the reasons set forth above, I grant Giandomenico's motion to remand (Doc. No. 6) and deny the Acting Commissioner's motion to affirm (Doc. No. 7). Pursuant to sentence four of 42 U.S.C. § 405(g), the clerk is directed to enter judgment accordingly and close the case, which I remand to the Acting Commissioner for further administrative proceedings consistent with this Memorandum and Order.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

November 15, 2017

cc: Christine Woodman Casa, Esq.
T. David Plourde, Esq.